UNITED STATES v. ROBBINS et al.

(District Court, D. Utah. September 2, 1907.)

No. 1,044.

1. PUBLIC LANDS—COAL LANDS—ACQUISITION—CONSPIRACY.

Where defendant conspired to obtain large tracts of coal land by procuring others to enter the land in separate parcels as cash purchasers and pay for it with money furnished by defendants, and to hold the land in secret trust for them, whereby defendants expected to obtain title to land which they could not have obtained in their own names, the transaction was illegal, and the title acquired by the entrymen was subject to vacation in equity.

2. CONSPIRACY—STATUTES—CONSTRUCTION.

Rev. St. 5440 [U. S. Comp. St. 1901, p. 3676], prohibiting conspiracy to defraud the United States, must be strictly construed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 60; vol. 44, Statutes, §§ 322, 323.]

3. SAME—SCOPE OF CONSPIRACY—FRAUD.

Defendants entered into a conspiracy to defraud the United States of title to and the possession of large tracts of coal land by procuring others to enter the land in separate parcels as cash purchasers; defendants furnishing the money, and the entrymen holding the land in secret trust for defendants. Held that, the gist of the conspiracy being the intent to give such entries a false appearance for the purpose of misleading the United States, it constituted a conspiracy to defraud the United States, prohibited

by Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], though defendants did not stand in such a position to the government as to require a disclosure of the true facts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 60.]

On Demurrer to Indictment.

H. E. Booth and F. A. Maynard, for the United States.
John M. Zane and John M. Waldron, for the defendants.

MARSHALL, District Judge. This indictment is drawn under section 5440 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3676]. It is challenged by a demurrer. In substance it charges that the four defendants conspired together to defraud the United States of the title to and the use and possession of large tracts of coal land, situated in Utah and aggregating more than 4,000 acres, by procuring other parties to enter the land in separate parcels as cash purchasers, but with money furnished by the defendants and in secret trust for them, with intent to defraud the United States, and thereby obtain title to coal lands which they could not directly obtain in their own names. The various entries of the land by the parties induced to act for the conspirators are charged as acts to effect the object of the conspiracy.

In support of the demurrer it is contended that the scheme above outlined is not fraudulent within the meaning of the statute. It is admitted that under the decision in the case of United States v. Trinidad Coal & Coke Company, 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640, the transaction contemplated was illegal, the title acquired by the entrymen and those holding under them with notice voidable, and that a court of equity would treat the title as fraudulently acquired; but it is argued that this fraud is purely constructive, a mere fiction of a court of chancery for the purpose of affording a remedy, and as such not within section 5440, and that this section, being penal, must be strictly construed, and, so interpreted, only common-law, as distinguished from constructive, frauds fall within its provisions. The position as to a strict construction of section 5440 is well taken; but the defendants argue that the provisions of the statute regulating the acquisition of the title to coal lands from the government, and purely beneficial in their nature, are subject to the same strict construction when incidentally relevant in a criminal case, and that, if so construed, the interpretation placed upon these statutes in the Trinidad Case, justified in a suit in equity, is inadmissible in a criminal proceeding. I find no authority for this contention; but it is unnecessary to discuss it here, as in the case cited the Supreme Court construed the various statutory provisions as plainly and obviously prohibiting the scheme here in question, and even in a criminal proceeding the statute cannot be so strictly construed as to exclude its plain and obvious meaning.

But was it a scheme to defraud under section 5440? It is said that no false representation was made; that the various applicants for the land simply did not voluntarily disclose the true facts, but that there was no active fraud, actionable at common law. It is true that, in order to fall within the prohibition of section 5440, the conspiracy

must contemplate active deception, and that the defendants did not stand in any such position to the government as to require a disclosure of all material facts, provided nothing was done to mislead. But the defendants are not advantaged by this admission. The gist of the conspiracy was to give the entry a false appearance for the purpose of misleading. The real purchasers were the conspirators, and pretended purchasers were put forward to conceal the real transaction and to induce a conveyance which would not otherwise be made. Silence, in view of the misleading appearances, would have an active property, and be in effect an affirmative representation that the apparent facts were the real facts. In Stewart v. Wyoming Ranche Co., 128 U. S. 383, 388, 9 Sup. Ct. 101, 103, 32 L. Ed. 439, it is said with respect to actionable fraud:

"The gist of the action is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff. The case of Laidlaw v. Organ, 2 Wheat. 178, 4 L. Ed. 214, is much in point. In an action by the buyer of tobacco against the sellers to recover possession of it, there was evidence that before the sale the buyer, upon being asked by Girault, one of the sellers, whether there was any news which was calculated to enhance its price or value, was silent, although he had received news, which the seller had not, of the treaty of Ghent. The court below, 'there being no evidence that the plaintiff had asserted or suggested anything to the said Girault calculated to impose upon him with respect to the said news, and to induce him to think or believe that it did not exist,' directed a verdict for the plaintiff. Upon a bill of exceptions to that direction, this court, in an opinion delivered by Chief Justice Marshall, held that while it could not be laid down, as a matter of law, that the intelligence of extrinsic circumstances which might influence the price of the commodity, and which was exclusively within the knowledge of the vendee, ought to have been communicated by him to the vendor, yet at the same time each party must take care not to say or do anything tending to impose upon the other, and that the absolute instruction of the judge was erroneous, and the question whether any imposition was practiced by the vendee upon the vendor ought to have been submitted to the jury."

In Chicago & A. R. Co. v. Shea, 66 Ill. 471, a shipper delivered to a carrier for transportation a bundle having the appearance of bedding only, while in fact it contained within the bedding costly clothing. This was not disclosed to the carrier, and the bundle was sent at a low rate. The goods having been lost, it was held that the shipper's failure to disclose the facts, in view of the appearance of the bundle, was fraudulent, and precluded any recovery for any of the articles except the bedding.

In Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82, in order to induce the purchase of shares of stock, Tyler, president of the corporation, on April 10, 1884, wrote respondent, saying:

"The last dividend that was declared was a 7 per cent. semiannual. The fiscal year ends on the 1st of June."

This statement was literally true; but it was said by the court, on page 98 of 143 U. S., page 346 of 12 Sup. Ct. (36 L. Ed. 82):

"This was calculated naturally to produce the impression upon the plaintiff's mind that the last dividend was declared on the 1st day of June, 1883; whereas, the last dividend was June 1, 1882. It must be inferred that, if the plaintiff

had been informed that no dividend had been declared since June 1, 1882, he would not have subscribed for the stock. This suppression of material facts, which Tyler was bound, in good faith, to disclose, was equivalent to a false representation."

Tyler occupied no position of trust with respect to the purchaser of the shares of stock. The duty to disclose resulted only from having said something which, without additional disclosure, had a tendency to mislead. While this suit was in equity, the recovery against Tyler can only be upheld to its full extent on common-law principles. The fraud charged in the indictment and admitted by the demurrer falls within that prohibited by section 5440.

The indictment is also specially demurred to for the want of certainty, and in so many particulars that a separate statement of them would unduly prolong this opinion. I think that the indictment is sufficiently certain; and the demurrer will be overruled, and the defendants required to plead to the indictment.