RODMAN B. ELLISON *et al.* Appellees, *vs.* THE ADAMS EX-
PRESS COMPANY, Appellant.

*Opinion filed June 29, 1910.*

1. CARRIERS—*at common law a carrier might limit its liability.*
At the common law a carrier might by special contract stipulate
against liability for any loss not the result of its own negligence
or that of its servants.

2. SAME—*when statutory restriction against limiting common
law liability does not apply.* The Illinois Common Carriers act,
which prohibits a common carrier from limiting its common law
liability, has no application to a contract made in another State for
the carriage of merchandise delivered to the carrier in such State.

3. SAME—*shipper cannot recover if he knowingly violated the
law in making it.* A shipper who, for the purpose of obtaining a
lower rate of carriage, knowingly and intentionally violates the
provisions of paragraph 3 of section 10 of the Inter-State Com-
merce act by refusing to disclose to the carrier the value of the
merchandise delivered to the carrier, cannot recover in case the
merchandise is destroyed, as his contract is void.

4. CONTRACTS—*courts will not assist party to recover on illegal
contract.* A contract knowingly made in violation of a statute is
void, and there can be no legal remedy for its breach where there
is nothing in the statute from which it may be inferred that it was

the legislative intention to limit the scope of the act to the exaction of a penalty from the wrongdoer and relieve him from the ordinary consequences of making a contract forbidden by law.

5. COURTS—*ground upon which courts refuse to enforce claims arising from illegal contracts.* In refusing to enforce claims arising out of a violation of law, courts are not moved by a consideration of the supposed rights of either party, but in maintenance of their own dignity, the public good and the law of the State.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

CHARLES B. ELDER, for appellant.

FREDERIC L. GOFF, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellees, at Philadelphia, delivered to the appellant, a common carrier, two packages of merchandise to be carried to Chicago and there delivered, one of the value of $349.95 to John B. Ellison & Sons, the other of the value of $229.50 to Herzka Bros. Receipts were given for the packages, which were written by appellees' clerk on printed blank forms in a book furnished by the appellant. The receipts, except the name of the consignee, were alike, and that for the Ellison shipment reads as follows: "The company's charge is based upon the value of the property, which must be declared by the shipper.—Non-negotiable bill of lading.—Adams Express Company, form 268C.— Received from John B. Ellison & Sons, Philadelphia, Pa., Feb. 2, 1907, the property hereinafter described, to be forwarded subject to the terms and conditions of the company's regular form of receipt printed on inside front cover of this book.—Liability limited to $50 unless a greater value is declared." On the inside front cover of the book appears the following: "Terms and conditions of the Ad-

ams Express Company's regular form of receipt, subject to which the company agrees to carry the property hereinafter in this book described, to which terms and conditions the shipper hereby agrees and as evidence thereof accepts this book. (1) In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding $50 unless a greater value is declared, the shipper agrees that the value of said property is not more than $50 unless a greater value is stated herein, and that the company shall not be liable, in any event, for more than the value so stated, nor for more than $50 if no value is stated herein," and other conditions. On the page containing the receipt was a column for value, in which was stamped, "Value asked and not given." Appellees' clerk delivered the packages to the appellant without stating the value of either of them, though he was familiar with the contents of the receipt, knew that the charges for transportation increased with increased valuation and knew that there was an additional charge where the value was over $50. He had been instructed by his employer not to declare the values of goods shipped. Had the true value of the contents of the packages been stated, the transportation charges would have been increased forty cents and thirty cents, respectively. After the goods were carried to Chicago they were destroyed by fire before delivery to the consignees. Packages valued at more than $50 were handled separately and were carried in a car in personal charge of a messenger, while packages of less value were carried in different cars, which were sealed. If these packages had been valued over $50 they would have gone forward on a different car from that which was burned and would not have been destroyed. The appellant, after suit was brought, contending that its liability was limited to $50 for each package, paid into court $100 and the accrued costs, which the appellees declined to receive. On the trial each party asked the court to direct

a verdict in its favor. Both motions were denied and a
verdict was rendered in favor of the appellant, upon which
judgment was rendered. The appellees sued out a writ of
error, the appellant assigned cross-errors, and the Appel-
late Court reversed the judgment and rendered judgment
against appellant for the value of the merchandise, $579.45.
The appellant, having procured a certificate of importance,
seeks a reversal of this judgment.

At common law a carrier might by special contract stip-
ulate against liability for any loss not the result of its own
negligence or that of its servants. (*Illinois Central Rail-
road Co.* v. *Morrison,* 19 Ill. 136; *Western Transportation
Co.* v. *Newhall,* 24 id. 466.) Since the merchandise in this
case was received by the appellant and the contract for its
carriage made in another State, the restriction contained in
chapter 27 of the Revised Statutes of this State, concern-
ing the right of a carrier to limit its common law liability,
does not apply. The verdict having been for the defend-
ant, the jury, under the issues presented, must have found
that the appellees assented to the terms and conditions of
the receipt, and the Appellate Court having made no differ-
ent finding of facts in its judgment must be presumed to
have found the same way. It is, however, contended by
the appellees that by virtue of section 20 of the Inter-State
Commerce act no contract of a carrier engaged in inter-
State commerce can exempt it from liability for such a loss
as that here involved. We do not decide whether the sec-
tion cited applies to this transaction but proceed upon the
assumption that appellees' position is correct and that no
valid contract exempting the appellant from liability could
be made.

Among other claims made by the appellant on the trial
it insisted that the appellees knowingly and willfully, by
failing to state the value of the merchandise delivered, ob-
tained transportation for each shipment at less than the
regular rate, in violation of paragraph 3 of section 10 of

the Inter-State Commerce act, which provides that "any person and any officer or agent of any corporation or company who shall deliver property for transportation to any common carrier subject to the provisions of this act, or for whom, as consignor or consignee, any such carrier shall transport property, who shall knowingly and willfully, by false billing, false classification, false weighing, false representation of the contents of the package or false report of weight, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent or agents, obtain transportation for such property at less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is hereby declared to be a misdemeanor, and shall, upon conviction thereof in any court of the United States of competent jurisdiction within the district in which such offense was committed, be subject for each offense to a fine of not exceeding $5000 or imprisonment in the penitentiary for a term of not exceeding two years, or both, in the discretion of the court." (3 Fed. Stat. Ann. 835.) It was stipulated that schedules of rates in proper form had been filed with the inter-State commerce commission by the appellant prior to the time of these shipments, showing that the rates therein mentioned were based upon a valuation of not exceeding $50 in case of each shipment, and that the shipper is required to declare the value, and when a value in excess of $50 is declared, an additional charge is made as provided in the classification which is a part of the said schedules; that the classification referred to showed additional charges where the value exceeds $50, and that such additional charge, when the rate, based on a valuation of not exceeding $50, exceeds $1 per hundred pounds and is not more than $3, is ten cents for each $100 value or fraction thereof; that the rate stated in said schedules for the carriage from Philadelphia to Chicago of articles of the class including such goods as those sued for, based on a

value of not exceeding '$50, was $2.25 per hundred pounds, and the charges based on the said rate for the shipment to J. B. Ellison & Sons, Chicago, would be $2.82 and for the shipment to Herzka Bros. would be $3.04.

It is contended that on grounds of public policy the appellees, having been guilty of a willful violation of the act by fraudulently obtaining transportation of the goods at an illegal rate through the suppression of information as to the true value thereof, ought not to be permitted to recover for their loss an amount greater than that on which the rate for their transportation was based. It is undisputed that the appellees knew that the rate was based on valuation; that they intentionally failed to state the value; that they knew that if the value was not stated the rate would be based on a valuation of $50 and if it was stated truly that the rate would be higher, and that they directed their employee who delivered the goods to appellant not to state the value. It is therefore undisputed that the appellees knowingly and willfully obtained transportation of their property at less than the regular established rates, in violation of the statute.

Courts of justice will not assist parties who have participated in a transaction forbidden by statute to assert rights growing out of it. There can be no right of recovery upon a contract which is against good morals, forbidden by law or opposed to public policy. The law will not lend its aid to enforce a demand having its origin in a breach of the law itself. This principle has been illustrated by a multitude of decisions and finds expression in the maxim of the Roman law, which is also recognized wherever the common law prevails: *Ex turpi causa non oritur actio.*

In *Samuels* v. *Oliver,* 130 Ill. 73, to an action upon an admitted indebtedness the defendant pleaded, by way of set-off, an account for cash paid in settling losses incurred in the purchase of 80,000 bushels of wheat for the plain-

tiff and commissions on the purchase. The purchase was made in pursuance of the defendant's employment by the plaintiff to assist them in running a corner in wheat. The transaction was for an illegal purpose and of a character forbidden by the Criminal Code of this State. It was held that neither party could maintain an action for any right growing out of the contract or the illegal transaction in which they were engaged. The defendant could not recover the money he had advanced or be charged with what he had collected. The law simply refused its assistance in the enforcement of such a contract or any right growing out of it.

In *Bishop* v. *American Preservers' Co.* 157 Ill. 284, an action of replevin was brought, based upon a bill of sale for the property involved, consisting of a stock in trade, machinery and equipments used in the business of manufacturing and dealing in fruit butters, jellies, preserves and like products. It appeared that the bill of sale was executed in part performance of an agreement for the formation of a trust designed to bring into one combination all manufacturers of such products in the United States, to prevent competition and secure a monopoly of the business. It was held that the bill of sale, having been executed to accomplish an unlawful purpose, rested under the ban of the law, and the court would not aid the vendor to recover the property by means of it. It is there said (p. 317): "The general rule of law is that a contract made in violation of a statute is void, and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract he cannot recover." Among other authorities cited is the case of *Miller* v. *Ammon,* 145 U. S. 421. There the defendant, a citizen and resident of Wisconsin, purchased of the plaintiff, in Chicago, a quantity of wine and suit was brought in Iowa to recover the price. The defense was that an ordinance of the city prohibited the sale of spirituous or vinous liquors in quantities of one gallon or

more without a license having been obtained therefor; that the plaintiff had not obtained such license and the sale was in violation of the ordinance. It was held that there could be no recovery, the court saying, there is "nothing in the language of the ordinance or the subject matter of the regulations which excepts this case from the ordinary rule that an act done in disobedience to the law creates no right of action which a court of justice will enforce."

It is recognized that from the language of an act or the subject matter of the legislation and the evil sought to be remedied an intention may be manifested on the part of the legislature to limit the scope of the act to the exaction of a penalty and to relieve the wrongdoer from the ordinary consequences of a forbidden act, but the general rule is stated that there can be no legal remedy for that which is itself illegal, and that when the statute is silent and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. The general rule is undoubted which was stated by Lord Mansfield in the case of *Holman* v. *Johnson,* Cowp. 341: "The principle of public policy is this: *Ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." No person who has participated in a transaction forbidden by statute will be allowed to assert rights growing out of it. "Whether the form of action is in contract or in tort, the test in each case is whether, when all the facts are disclosed, the action appears to be founded in a violation of law, in which the plaintiff has taken part." (*Hall* v. *Corcoran,* 107 Mass. 251.) Courts, in refusing to enforce claims arising out of a violation of law, are not moved by a consideration of the supposed rights of either party but in the maintenance of their own dignity, the public good and the laws of the State.· *Estate of Smythe* v. *Evans,* 209 Ill. 376.

The appellees' action, when all the facts are disclosed, is founded upon a contract knowingly entered into in vio-

lation of law. Whatever the form of the action, whether in contract or tort, it had its basis in the contract of carriage. The wrong complained of is the breach of the illegal contract by which the appellees put their property into the possession of the appellant. That contract was not only a fraud on the appellant but an intentional evasion of the Inter-State Commerce act, one object of which is to prevent discrimination in the transportation of property between the States. That act requires every carrier subject to its provisions to charge each shipper the same sum for a like and contemporaneous service. It makes unlawful the giving or the receiving of any rebate, concession or discrimination in respect of the transportation of property in inter-State commerce by any carrier, whereby such property shall be transported at a less rate than that named in the tariffs published and filed by the carrier. To secure the purposes for which the act was adopted it is made unlawful, as we have seen, and is punishable by fine and imprisonment, for any person, with or without the consent or connivance of the carrier, to obtain transportation for his property at less· than the regular rate. There is nothing in the act which indicates an intent to limit the scope of this prohibition to the exaction of the penalty, leaving the contract binding in favor of the party who has knowingly and willfully obtained it against the prohibition of the act. Nor in the subject matter of the legislation do we find anything to justify a presumption that Congress intended to relieve wrongdoers of the ordinary effect of their acts. Compliance with the requirements of the act by the shipper as well as the carrier is essential to its successful operation, and we cannot presume that Congress intended that the contracts forbidden by it should be valid and should be enforced to the same extent as if there were no prohibition, merely subjecting the offender to the penalty if detected and prosecuted. We see no reason which excepts this case from the rule that a contract entered into in vio-

lation of an express statutory prohibition cannot be made the basis of an action in a court of justice.

The trial court should therefore have sustained appellant's motion to direct a verdict in its favor. The court did not do so but the jury returned such a verdict and the judgment rendered was the proper judgment in the case. The Appellate Court erred in reversing it, and its judgment is therefore reversed and that of the municipal court is affirmed.

*Judgment reversed.*