## G. D. Cohn, Plaintiff in Error, v. Adams Express Com=pany, Defendant in Error.

## Gen. No. 16,251.

1. COMMON CARRIERS—*when law of sister state governs.* Where a shipment is made in New York, and no part of the transaction takes place in Illinois, the law of New York will govern the contract relations of the parties and the right of the carrier to limit its common law liability unless the law of New York be superseded by the higher authority of a federal enactment.

2. COMITY—*effect of decisions of courts of sister states.* If a decision of the court of last resort of a sister state involved the construction of a federal statute binding in all states such decision will not necessarily be adopted as correctly interpreting the law, unless the reasoning thereof is approved by the courts of this state.

Error to the Municipal Court of Chicago; the HON. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed April 29, 1912.

R. G. McDONALD, for plaintiff in error.

CHARLES B. ELDER, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

G. D. Cohn was in November, 1906, engaged in the clothing business in Cleveland, Ohio, under the name of the "Fitwell Clothing Parlors." In that month he ordered from the Leon Mann Company of New York a quantity of rain coats. Their value, or at least their cost price, was $228. December 3, 1906, two packages containing the goods in question were delivered in New York by the Mann Company to the Adams Express Company, consigned to the plaintiff at Cleveland, Ohio. The goods in one package were worth $126.50, and those in the other $161.50. The first package was duly received by the plaintiff, the

consignee. The second one was never received by him, and the Adams Express Company is unable to state what became of it. The Adams Express Company on October 3, 1907, made a tender of $50 to settle the claim for the lost goods, but it was declined and this suit was brought in the Municipal Court of Chicago. The plaintiff claimed at least $161.50. It was agreed by the parties that it could be considered that the defendant had made a tender of $50 and interest and paid the same into court. It was conceded at the trial that if as a matter of law the plaintiff was not entitled to recover more than $50 and interest, it would be proper to direct a verdict for the plaintiff for that amount and to enter judgment for that amount without costs. The trial Judge, holding the law to be as indicated, therefore instructed the jury that the plaintiff could not recover more than $50, and interest, and the defendant having agreed that the interest up to the time of the tender amounted to $3.50, a verdict for $53.50 in favor of the plaintiff was rendered and judgment was entered for that amount. This judgment the plaintiff attacks in this Court, asserting that in peremptorily instructing the jury to assess the plaintiff's damages at only $53.50 the Municipal Court erred.

But one question is really involved: Does the law of New York govern the rights of the parties in this controversy? It is conceded by counsel for plaintiff that by the law of New York, unless said law was superseded as to interstate shipments by Section 20 of the Inter-State Commerce Act of the United States (commonly known as the Carmack Amendment to the Hepburn Act, being Amendment of June 29, 1906, to the Act of Congress of February 4, 1887), the plaintiff could not recover in the Courts of New York more than fifty dollars under the circumstances shown by the evidence, and to be hereinafter stated, as to an asserted limitation of liability by the defendant.

It is, however, maintained by the plaintiff that for two reasons the law of New York does not govern:

*First.* Because it is against our public policy and in violation of the Act of March 27, 1874, entitled "An Act to Fix the Liability of Common Carriers Receiving Property for Transportation," which reads as follows:

"Be it enacted, etc. That whenever any property is received by a common carrier to be transported from one place to another, within or without this State, it shall not be lawful for such carrier to limit his common law liability safely to deliver such property at the place to which the same is to be transported by any stipulation or limitation expressed in the receipt given for such property."

*Second.* Because Section 20 of the Inter-State Commerce Act of the United States, hereinbefore mentioned, overrides, if it does not change, so far as interstate shipments are concerned, the law as declared by the Courts of New York concerning the limitation of liability by carriers. That Section provides:

"That any common carrier, railroad or transportation company, receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed. Provided, that nothing in this Section shall deprive the holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

In the case at bar the shipment was under the following circumstances and terms: One Hindleman was

Cohn v. Adams Express Co., 170 Ill. App. 174.

in charge of the shipping department of Leon Mann Company. He delivered the two packages in question to a driver of the Adams Express Company and knew that each one contained goods worth more than fifty dollars. The driver was the one usually receiving goods from him and Leon Mann Company. A book of printed Express Company receipts, with blanks to be filled on occasion, had been kept and used by Hindleman and the Mann Company in the transaction of business between them and the Express Company for two or three years. Hindleman had never read "what is on the back of these receipts" and did not know that there was a limitation of the amount of liability on the back. There was, however, (in small print) such a limitation on the same page as the receipt proper, and the entire printed portion of the receipt was duplicated on the reverse side of the page.

The printed provision referred to was as follows:

"In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars unless a greater value is stated herein, and that the Company shall not be liable in any event for more than the value so stated nor for more than fifty dollars if no value is stated herein."

Concerning this clause and the increased charge in case of increased valuation, Leon Mann of the Mann Company had talked with an agent of the Adams Express Company, by which the Mann Company shipped considerable freight. This increased charge was at the rate of ten cents additional on every $100 or fraction thereof over $50. If no value was stated and where the value stated did not exceed $50, the rate was $1.75 per 100 pounds, which was the rate fixed for the package herein involved. It was handled as ordinary freight. Where the value is declared to be

over $50, extra precautions against loss are taken by the Express Company. The receipt bore in pronounced type at its head the statement, "The Company's charge is based upon the value of the property, which must be declared by the shipper."

Hindleman filled in the blanks in the receipt in question before delivering the packages to the Express Company, writing in the date, "12/03/06," the description as "Two Pkges" and the name of the consignee. When the goods were delivered, the driver for the Express Company signed his name in the proper column as receiving the same from the Company. Nothing was said about the value.

The shipment was made in New York, and no part of the transaction even was to be made in Illinois. It is settled by the decisions of the Supreme Court of this State that under these conditions the law as declared in New York will govern the decisions of our courts unless superseded by the higher authority of a valid Federal enactment. The law of Illinois in particulars in which it differs from that of New York is not therefore in question. Coats v. C. R. I. & Pacific R. R. Co., 239 Ill. 154, and cases therein cited.

Under the law of Illinois it may be that it would have been necessary to prove the actual knowledge and assent of the shipper to the limitation on the receipt to make it binding on him. It was not so necessary under the law of New York, as is abundantly proven by the evidence concerning the law of New York in the record and as is conceded by the plaintiff in error. The giving and accepting of the receipt in question was, under the law as declared by the Courts of New York, in the absence of fraud or imposition, the contract of shipment, and the rights of the parties were determined by its terms if they were not contrary to law.

Nor "since the merchandise in this case was received by the appellant and the contract for its car-

riage made in another State," does the "restriction contained in Chapter 27 of the Revised Statutes of this State concerning the right of a carrier to limit its common law liability" apply. Ellison v. Adams Express Company, 245 Ill. 410, p. 413.

It might be noted that in the Ellison case a similar transaction and loss were held by the Supreme Court to give no right of recovery whatever to the shipper, on the ground that the delivery by him of the goods to the carrier without valuation was intentionally in violation of the Inter-State Commerce Act, in order to secure the lower rate for carriage. The case differs, however, from that at bar, in that there was in it evidence of an express intention not to state the value, and of instructions from the consignor to the shipping clerk to that effect.

The only question left in the case at bar therefore is as to the effect on the limitation as to value of the 20th Section of the Inter-State Commerce Act, hereinbefore quoted.

When the briefs and arguments for the respective parties were filed in this cause, the Municipal Court of the City of New York had decided in Greenwald v. Weir, that this Section did not change the law of New York as to the right of the carrier to limit or fix the valuation of the shipment, but referred only to the additional liability imposed by the Act on the initial carrier for losses on connecting lines. This decision had been reversed by the Appellate Term of the Supreme Court of New York in Greenwald v. Weir (111 New York Supplement, 235), which held—one of the three Judges dissenting—that the provision of the Hepburn Act involved was general in its operation and allowed no limitation of liability as to value. This decision of the Appellate Term had been in turn reversed by the Appellate Division of the Supreme Court of New York for the First Department. Greenwald v. Weir, 115 New York Supplement, 311. The Ap-

pellate Division unanimously held that the only "liability imposed" by the Section of the Hepburn Act in question was a new liability on the initial carrier for a loss occurring on the line of a connecting carrier, and that it was merely exemption from the liability thus "imposed," for which the carrier was forbidden to contract with the shipper.

The cause was carried by the shipper to the New York Court of Appeals, where it was pending when the Briefs and Arguments were filed herein. Counsel for the plaintiff in error said in their argument that they confidently expected that the court of last resort in New York would in turn reverse the Appellate Division. This expectation, however, was disappointed. In Greenwald v. Barrett, 199 New York Reports, 170 (a change in the Presidency of the Express Company interested accounting for the difference in the entitlement of the case), the New York Court of Appeals, June 17, 1910, affirmed by a unanimous court the decision of the Appellate Division of the Supreme Court, holding that it "was obvious that the purpose of the provision of the Hepburn Act was merely to render the initial carrier in the case of interstate transportation over connecting lines liable to the lawful holder of its receipt or bill of lading for any loss or injury to the property shipped, whether such loss or injury occurred after the goods had passed out of the hands of the initial carrier or not, and to prevent interstate carriers from exempting themselves from liability for the loss of property or damage thereto after it had passed into the hands of another carrier to be transported to its destination," and that "the language of the enactment did not disclose any intent to abrogate the right of common carriers to regulate their charges for carriage by the value of the goods, or to agree with the shipper upon a valuation of the property carried."

If we are to consider the effect of the Hepburn Act

on the law of New York as settled by the Courts of New York, this is in itself conclusive, without reference to its soundness in reason, as it is the utterance of the Court of last resort of that State. It is argued, however, with force, that as the question involves the construction of a Federal Statute, binding in all the States, the decisions and opinions on it of the Courts of New York are valuable in the Courts of Illinois only for the reasoning they contain.

Trying them by this test, however, we come to the same conclusion. The reasoning of the Appellate Division of the Supreme Court of New York and of the New York Court of Appeals seems to us sound. But it is not the only high authority to the same effect.

The Supreme Judicial Court of Massachusetts and the Supreme Court of New Jersey have decided the question in the same way. Bernard v. Adams Express Co., 205 Mass. 254; Travis v. Wells, Fargo & Co., 79 N. J. Law 83. These cases were decided before the opinion in Greenwald v. Barrett was handed down by the New York Court of Appeals, but the reviewing Court in each of them approves of the decision of the Appellate Division in that case and of the opinion of Mr. Justice Scott therein.

It follows that we hold the judgment of the Municipal Court of Chicago correct, and it is affirmed.

*Affirmed.*