124    APPELLATE COURTS OF ILLINOIS.

Donchian v. Brink's Chicago City Express Co., 217 Ill. App. 124.

## M. B. Donchian, Appellee, v. Brink's Chicago City Express Company, Appellant.

### Gen. No. 24,998.

1. CARRIERS, § 161*—*right to stipulate against liability for loss at common law.* At common law a carrier may, by special contract, stipulate against liability for any loss not the result of its own negligence or that of its servants.

2. CARRIERS, § 165*—*limitation on liability on basis of value stated.* Where a shipper has knowledge of a provision in a carrier's receipts given him by the carrier whereby the carrier limits his liability for loss to a specified amount unless a different value is stated in the receipt and assents thereto, he cannot recover of the carrier an amount in excess of that stipulated on the loss of his shipment.

3. CARRIERS, § 178*—*when evidence shows assent of shipper to limitation on liability.* In an action by a shipper against an expressman to recover for the loss of the shipment, evidence examined and *held* to show that the shipper had knowledge of a provision in the expressman's receipt placing a limit on the value of shipments in the absence of another value being stated by the shipper, and that the shipper assented to such limitation and made the shipment without specifying the value of the article but concealed its real value.

4. APPEAL AND ERROR, § 1810*—*power of Appellate Court to enter judgment where cause tried without a jury.* Where a case is tried before the court without a jury, the Appellate Court may enter there such a judgment as the trial court should have entered.

5. COSTS, § 89*—*on reversal and entry of judgment against appellant for a less amount.* Where, on appeal, the judgment below is reversed and judgment is entered against the appellant for a less amount, the costs in the Appellate Court will be taxed against the appellee.

Appeal from the Municipal Court of Chicago; the Hon. FRANK H. GRAHAM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed and judgment with finding of facts. Opinion filed March 9, 1920.

WILLIAM ENGLISH, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

JOSEPH D. IROSE, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an action of the fourth class, in contract, commenced in the municipal court of Chicago against the defendant, a common carrier, to recover the sum of $125, the value of a package of three rugs, which the defendant received from plaintiff and agreed to safely carry to the residence of a Mrs. Wilson in Chicago, but lost it in transit. It did not appear how the package was lost or that defendant was guilty of any negligence. Defendant admitted that the fair market value of the rugs was $125. Plaintiff's theory was that the defendant was liable for said amount as an insurer. The defense was that plaintiff was only entitled to recover the sum of $20 because of the fraud of plaintiff in concealing from defendant that the value of the package was in excess of $20. On the trial, in addition to certain documentary evidence, the testimony of two witnesses was heard,—the plaintiff in his own behalf, and W. J. Bueneman, a driver for defendant. Plaintiff's shipping clerk, who delivered the package in question to Bueneman, on October 12, 1916, was not called as a witness, or the failure to produce him explained. The case was tried without a jury, and the court found the issues against defendant and assessed plaintiff's damages at $125, upon which finding the judgment appealed from was entered.

The following facts in substance were disclosed by the evidence: Plaintiff was a dealer in rugs at 21 S. Wabash avenue, Chicago. In the spring of 1915, about 18 months before the shipment of the package in question, Bueneman had a conversation with plaintiff relative to defendant making deliveries of packages for plaintiff in Chicago. At that time plaintiff was informed that the prices for deliveries of goods were fixed according to the weight and value of the goods,

and plaintiff was given a blank receipt book, identical in form with the receipt book hereinafter mentioned, and, at plaintiff's request, the driver wrote in said book a schedule of charges based upon weight and value. Subsequently plaintiff gave many packages to defendant to be delivered to various places in Chicago. The usual method adopted was that plaintiff's shipping clerk would write on a page of said receipt book the name and address of the consignee of a particular package, and sometimes he would put down a value of the package on said page and sometimes not, then the amount of the total charge, based on value and weight, would be figured, and defendant's driver would receive the proper sum of money, sign a receipt for the package on said page and take the package away for delivery to the consignee. When the package in question was delivered to Bueneman, the shipping clerk presented to Bueneman for his signature a prepared receipt made out on one of the pages of a receipt book. This particular book was introduced in evidence by plaintiff, and is in the transcript of evidence before us. It was not the same book, though identical therewith, which had been given plaintiff in the spring of 1915. It apparently had been in use since April, 1916. It contained 48 pages. On each page there was a "value" column, wherein could be written down the value of a particular package if that value exceeded $20, and there was printed on it, in large black type, up and down another column immediately to the left of the "value" column, the words: "Correct value must be stated hereon when same is more than $20." Each page also had printed on it at the top the words: "It is further agreed that in no event shall the holder hereof demand beyond the sum of twenty dollars, at which the article herein mentioned is valued, unless otherwise herein stated, in which event an additional charge will be made for insurance." On the next to the last page there appears the date, "10/12/16," the name of

the consignee, "Mrs. K. S. Wilson," and her address, all written in pencil and seemingly in the same handwriting; opposite said name and address and in the column headed "Receipted by" is the name "Bueneman" and the figures "25," written in pencil in a different handwriting; in the "value" column opposite the name of Mrs. Wilson, no sum appears to be written, but in said column it appears as if something had been erased; on the same page are the names of three other consignees and their respective addresses, and opposite each is the name "Bueneman," and the abbreviated words and figures "Pd. 50," all written in pencil. An examination of the other pages of said receipt book discloses that all writing thereon is in pencil; that the date on the second page is. "4/26/16"; that the other pages bear dates subsequent thereto; that there are written names and addresses of other consignees on most of the other pages, opposite which frequently appears in the "Receipted by". column, the name "Bueneman," and occasionally other names; that, opposite the names of many of said other consignees and in the "value" column, there are written figures denoting the value of the particular package; that in several instances these figures are "$50," and in some "$25," "$56," "$60," and "$104," and that frequently no figures at all appear in said column. Bueneman testified in substance that on the day the package was delivered to him by the shipping clerk, in the rear of plaintiff's store, he asked if said clerk had "put the value down"; that the clerk replied, "No, it is under $20"; that only said clerk and the witness were present at this conversation; that said clerk then went to plaintiff, who was in the front of the store, and "brought back the money," gave it to the witness and he receipted for the package and took it away; that a few days afterwards he learned that the package had been lost and he went again to plaintiff's store, saw plaintiff and said shipping clerk, and also the receipt

128    APPELLATE COURTS OF ILLINOIS.

Donchian v. Brink's Chicago City Express Co., 217 Ill. App. 124.

he had signed; that the receipt then had "$125" written in the value column, opposite Mrs. Wilson's name, which figures were not there when he receipted for the package; that he told plaintiff that "the receipt would be void with the value put in afterwards"; and that thereupon plaintiff said he would "rub it out," and did so. Plaintiff, in his testimony, admitted that the "$125" value had been written on the receipt by somebody after Bueneman had receipted for the package, and that after his talk with Bueneman the figures were erased; and that he (plaintiff) was in the rear of his store, on October 12, 1916, when the package in question was delivered to Bueneman, that nothing was said at that time by either Bueneman or the shipping clerk as to the value of the package, and that he heard "practically" everything that was said at the time by either Bueneman or said clerk. Plaintiff further testified in substance that, while he had "glanced over these receipts many times," yet he, personally, "did not know that there was a provision in the receipt limiting the liability for loss to $20 unless the value was stated"; but that he did not know whether said shipping clerk knew of the limitation or not. Bueneman further testified in substance that plaintiff's different shipping clerks had many times delivered packages to him, as defendant's driver, and paid him charges thereon based upon value as well as weight.

"At common law a carrier might by special contract stipulate against liability for any loss not the result of its own negligence or that of its servants." (*Ellison v. Adams Exp. Co.*, 245 Ill. 410, 413.) By section 1 of chapter 27 of the Revised Statutes of Illinois (Hurd's Rev. St. 1917, J. & A. ¶ 2165), it is provided that it shall not be lawful for a common carrier to limit its common-law liability safely to deliver property "by any stipulation or limitation expressed in the receipt given for such property." In *Nonotuck*

*Silk Co. v. Adams Exp. Co.*, 256 Ill. 66, it is decided that a provision in an express company's receipt, limiting the amount of liability to a certain sum less than the value of the goods in case no valuation is given, is an attempt by the express company to limit its common-law liability. (See also, *Cutter v. Wells, Fargo & Co.*, 237 Ill. 247.) In *Plaff v. Pacific Exp. Co.*, 251 Ill. 243, 248, it is said: "The law is, we think, settled in this State that where a common carrier delivers to the shipper a receipt for goods received for shipment which limits its common-law liability, in order to bind the shipper it must be made to appear by the carrier that the shipper was *aware of* the restriction contained in the receipt." In *Boscowitz v. Adams Exp. Co.*, 93 Ill. 523, 530, it is said: "A clause in a receipt given to a shipper of goods limiting and restricting the carrier's common-law liability incident to its general employment, if understandingly *assented to* by the owner, will as effectually bind him as though he had signed it. Whether such restrictions have been assented to in any given case is always a matter of evidence." And the burden is upon the carrier to show that the shipper assented to the restrictions. (*Wabash R. Co. v. Thomas*, 222 Ill. 337, 344; *Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.*, 250 Ill. 396, 401.) In the case of *Henry Oppenheimer & Co. v. United States Exp. Co.*, 69 Ill. 62, the question presented, under the peculiar facts disclosed by the evidence, was as to the effect of the clause in a receipt restricting the liability of the carrier to a certain named amount unless the value of the package is stated. The court said that "the denial in the testimony that the consignors had knowledge of this condition in the receipt must be held to be overcome by the circumstances of the case." The court further said (p. 66):

"A distinction exists between the effect of those notices by a carrier which seek to discharge him from duties which the law has annexed to his employment,

and those, like the one in question, designed simply to insure good faith and fair dealing on the part of his employer—in the former case, notice alone not being effectual, without an assent to the attempted restriction; while in the latter case, notice alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient. * * * The common carrier is liable, as we find it frequently laid down, in respect to his reward, and the compensation should be in proportion to the risk. As the carrier incurs a heavy responsibility, he has a right to demand from the employer such information as will enable him to decide on the proper amount of compensation for his services and risk, and the degree of care which he ought to bestow in discharging his trust. * * * But independent of the qualifying provision contained in the receipt, we should be inclined to sustain the defendant's claim of exemption from liability on the ground of a want of good faith in not disclosing the value of the goods. * * * This (certain evidence as outlined) shows that there was a designed suppression of the value of the goods. That was unfair conduct on the part of the shippers of the goods. The effect of such conduct to relieve the carrier from his liability as insurer, is asserted in the cases of *Chicago & A. R. Co. v. Thompson,* 19 Ill. 578, and *American Exp. Co. v. Perkins,* 42 Ill. 459. * * * The court below was justified in coming to the conclusion that the consignors elected to take the risk of the loss, rather than subject the plaintiffs to the enhanced charges that would have been made had the value of the package been disclosed.''

In the *Boscovitz* case, *supra,* in referring to said *Oppenheimer* case, our Supreme Court said (p. 531):

''While that case declares salutary rules designed to secure good faith between the shipper and the carrier, it does not go to the extent counsel seem to understand it. We do not wish to be understood as departing in any degree from the law declared to be applicable to the facts of that case. * * * It will be seen there is in that case no departure from the

uniform decisions of this court, that a carrier cannot be released from the duties and liabilities annexed to its employment, unless the shipper assents to the attempted restrictions.    That is apparent from the fact it is said, in the beginning of the case, 'the denial in the testimony that the consignors had knowledge of this condition in the receipt must be held to be overcome by the circumstances of the case.' The condition to which reference is made is the limitation clause as to the amount of recovery in case of loss, where no valuation of the goods is stated.  On looking into the facts of the case, the conclusion was fully warranted. There was in that case what is very justly characterized as 'unfair conduct on the part of the shippers of the goods.' "

In the *Cutter* case, above cited (237 Ill. 247, 249), it is said: "The *Oppenheimer* case was explained in *Boscovitz v. Adams Exp. Co.*, *supra*, and as there explained is not in conflict with the other Illinois cases cited above." In other cases decided in this State it has been held that, where there is a concealment of the value of the goods delivered for transportation, the common carrier is relieved from its liability as an insurer of the full value. (*Chicago & A. R. Co. v. Shea*, 66 Ill. 471; *Michigan Cent. R. Co. v. Carrow*, 73 Ill. 348.)

We think it clearly appears from all the evidence in this case, notwithstanding plaintiff's testimony to the contrary, that plaintiff had knowledge of the condition mentioned in the receipts given from time to time by defendant to plaintiff for packages, limiting defendant's liability for loss to $20 unless a different value was stated in said receipts, and had assented to such condition; that the package in question was shipped without specifying any value in excess of $20, and with such knowledge and assent; and that the real value was at the time of shipment concealed from the defendant.    And we are of the opinion that, under the law applicable to such facts, the trial court should

132    APPELLATE COURTS OF ILLINOIS.

Donchian v. Brink's Chicago City Express Co., 217 Ill. App. 124.

have limited plaintiff's recovery to the sum of $20. And this cause having been tried before the court without a jury, we can enter here such judgment as the trial court should have rendered. (*Manistee Lumber Co. v. Union Nat. Bank,* 143 Ill. 490, 504; *Papke v. G. H. Hammond Co.,* 192 Ill. 631, 643.)

Accordingly, the judgment of the municipal court will be reversed, and judgment entered here against the appellant for $20, but the costs in this court will be taxed against the appellee. (*Moore v. People,* 108 Ill. 484, 488; *Romberg v. McCormick,* 194 Ill. 205, 212.)

*Reversed and judgment here for $20 against appellant with finding of facts.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.

Finding of facts. We find as ultimate facts that at the time of the shipment of the package in question, the plaintiff, M. B. Donchian, had knowledge of, and had assented to, the condition specified in the receipt given by the defendant, Brink's Chicago City Express Company, whereby said defendant's liability for loss of said package was limited to $20, unless a greater value was in said receipt stated; that at said time no greater value was stated by plaintiff in said receipt or otherwise; and that at the time of said shipment the plaintiff, acting in bad faith, concealed from the defendant the true value of the contents of said package.